Good morning, your honors. James Duff on behalf of Petitioner Gregory Silveira. As the court knows from the briefs that have been filed, Mr. Silveira acted as an agent for a gambler here, who provided money to Mr. Silveira to pay the gambler's debts. While that money was in Mr. Silveira's possession, it was always under the control of the gambler. That was evidenced by a $1 million amount that was given to Mr. Silveira. The gambler wanted the money back, and Mr. Silveira went and purchased a cashier's check with his own name on it, and the name of the gambler on it, and returned the money. The question here was, when does the money that was transferred to Mr. Silveira, when does that become proceeds under the money laundering statute, such as to trigger a money laundering violation? Essentially what you're saying is that Mr. Silveira was a middle person, and whether for a fee or not, we don't know. He played the role of transmitting money for the bet to a sports betting organization. Why isn't that, aside from the fact that he admitted to participating in the sports betting organization, why isn't that a role, even if he wasn't doing it on behalf of the sports bet anymore, that is covered by the statutes, both state and federal, and become proceeds? Because the issue is, when does the money that he received become proceeds? I know, but I want to know why it isn't a proceed when he gets it, and his role is to essentially broker or be a middle person for transmitting the money from the bettor to the sports betting organization, even if he's not working for the sports betting organization. Right, because he's in the same shoes as the gambler. It's no different than if the gambler had given the money to his wife and said, hey, pay this debt for me. Well, I'm not sure that would be the same. I mean, if he's not the bettor, then the cases that say that the bettor is not covered by the statute seem to disappear. I mean, the language in the statute would seem to cover it, no? But the money, when it's returned, to take the million-dollar example, Your Honor, where the money was returned to the gambler, if that money was proceeds, then that would be... The person has now decided that they don't want to bet $2.7 million, they only want to bet $1.7 million, so therefore, the middle person, they say, give me back $1 million. What does that have to do with anything? Oh, the money that goes back to the gambler, that would then be proceeds, and when the gambler spends it, that would be money laundering, that's the way it would go. Once money becomes proceeds, any subsequent transfer of that money is money laundering. So it can't be money laundering until the money itself gets in the hands of the bookmaker, and when the money is then transferred after that, then you can have money laundering. Why isn't it the moment that he receives it? Because as the government points out, Section 1955 incorporates state law, and they reference California Penal Code Section 337A, which makes it illegal to receive, hold, or forward whatsoever any money involved in sports gambling. It's involved in sports gambling once he receives it, even if he claims to be an intermediary, so at that point, it's proceeds, isn't it? All of those cases under that section, Your Honor, are people who were employed by the bookmaker who received the money. It's not like you give the money to your friend and say, go pay this debt for me. And have those cases said that the language doesn't mean what it says and doesn't extend to this situation? When you read those cases, those cases say that those people that received those monies were employed or working for the bookmaking operation. That's not what we have here. But where does the statute say that? Pardon me? Where does the statute say that? You have to be employed by the bookmaking organization. That's what all the cases say that interpret the statute. Well, that's the facts of the cases, but is there any case that has to be changed? I think that the intent of the statute was to go after bookmakers, not people that paid money on behalf of gamblers. Can I ask one other thing? Mr. Silvera admitted in his plea on the factual basis of the plea that he participated in a sports betting organization and so on. Why isn't that binding? I'm sorry? I was trying to hear your question. I didn't hear it very clearly. Mr. Silvera admitted in the plea or in the plea in the factual basis, I forgot which, or maybe both, that he had participated in a sports betting organization and so on. Why isn't that binding? I understand that he claims that he was misled, but he can be misled legally, but how could he be misled factually? He's participating as is the gambler participating. The gambler was participating in the illegal sports bookmaking operation, but he wasn't violating the money laundering statute, so he was no more than the gambler was in the participation. His participation was the same as the gambler's participation. The gambler wouldn't be charged with money laundering. Where is the language that I'm talking about? Was it in the agreement? Yes, in the agreement they changed the... I found it. He participated in the operation of an illegal gambling organization. Right, just as the gambler participated in the operation of the illegal gambling business by placing bets. He did it. He was not an owner, employee, or agent of the illegal gambling business. Because the proceeds were generated by the illegal sports betting business. That's right, and that's where the malpractice was. They initiated these things, but it's not malpractice. Well, the money didn't come from an illegal sports bookmaking operation. The money, from what Silvera knew, came from a legitimate source. When he initiated his three transfers, he had the intent to promote the carrying on of an illegal gambling operation. That's what his attorney told him he was doing. He wasn't. He doesn't know what his own intent was? His attorney told him what he did was illegal, and he went along with his attorney as to what he thought was illegal based upon the advice of his attorney. He had no independent knowledge that the money came from an illegal source. The money laundering statutes want to trace monies that come from illegal sources as to how they get cleansed, how the money gets cleansed. This had nothing to do with that. This was just a gambler paying his debt with legitimately earned monies, and he asked Silvera to do it as opposed to he doing it personally. Why did he ask Silvera to do it? Presumably because he wanted to launder the money, right? Because he didn't want the money to be traceable directly to him. But laundering the money is to hide illegally obtained money, not to take money that you don't want people to know how you're spending your money that's legally earned. We have here legally earned money, and this gambler didn't want people to know how he was spending his money. There's nothing wrong with that. That's not illegal. That's not money laundering. Your time is up. We'll give you a minute of rebuttal. I didn't say at the beginning, as I usually do, that the appellant or petitioner should preserve time, but that we're not going to watch their time for them. But that we will give you a minute of rebuttal. Thank you. And we will go to the government. Mr. Mankin. May it please the Court. Good morning, Your Honors. Jerry Yang on behalf of the United States. The defendant here is challenging his denial of the district court's denial of his ineffective assistance of counsel claim. In doing so, he has a burden to satisfy two prongs. First, the deficient performance, that the assistance he received was below an objective standard of reasonableness. And second, that he suffered prejudice, that there was a reasonable probability that before counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Now, he cannot demonstrate both prongs. He can't even demonstrate one prong. As for the first prong, deficient performance, the defendant essentially argues that counsel failed to apprise him of the definition of proceeds. Two, that counsel failed to inform him that he lacked the knowledge that $2.75 million came from prior unlawful activity. And three, that counsel failed to inform him that he had this agency defense. Now, all of these arguments, Your Honors, are based on his unsupported and self-serving claims that he was an agent of the gambler. The evidence in the record, however, shows that defendant was part of the illegal gambling operation. Well, suppose he was. Excuse me. Suppose he was. Suppose, I mean, I'm not sure that. Suppose he was. Suppose he had a separate business of taking money from people who want to place illegal bets and then finding a place to place the bets and following directions about placing the bet and placing the bet. Would that be covered by the statute including the incorporated California statute? It would be, Your Honor. Why do you have a harder argument when you have an easier one? His defense is that's what he was doing, as I understand. Your Honor, I think the reason is that this case is not, the facts of this case are not close to the line, I think as Your Honor alluded to right now. There is substantial evidence in the record that he is part of this gambling organization, at least an agent of this gambling organization. But even as Your Honor points out, even if he somehow had this independent business, so to speak, that somehow in between the gambling organization itself and the mere bettor, he nevertheless would still be guilty of this statute because the funds did become proceeds once it left the gambler's possession and into defendant's accounts. During the underlying prosecution, did the government ever, I didn't see it in the charging document or the plea agreement, did the government ever set forth what was the predicate for the 1955 charge? Yes, in the information, Your Honor, all three counts reference a violation of 18 U.S.C. section 1955A. Right, but you're now saying that, you know, on defining the illegal gambling operation and that the relevant state law is 337A. Was that ever spelled out or set forth at any point in the prosecution? Did you ever state as part of this what were the elements and what was the predicate? Not as to the state law. I believe it was California Penal Code 337A. That was not set forth in any of the documents, Your Honor. So how did you set forth that there was an adequate basis for the plea? What were the elements and did this get aired out? The elements in the plea agreement were for the laundering charge, the 1956A1, the promotional money laundering charge. And the information itself referenced, I'm sorry, the factual basis in the plea agreement also referenced the 1955 charge, the operating a gambling organization charge. Right, but isn't it an essential element of the 1955 that you have the state predicate? In other words, what law or what has to be a violation of the law of the state or of the political subcommittee is that stated? It doesn't have to be. I guess to this kind of so-called, I guess, second degree of statute, namely 1956 has a predicate of 1955. 1955, which arguably has a predicate of the state law, the second degree was not articulated in the plea agreement, in the elements. The exception for debtors, is that a matter of construction or is it in the statute someplace? That's a matter of construction, Your Honor. My understanding is that the Sacco case, and along with its progeny, established this mere better exception to the statute. And here, defendant, even by his own admissions, namely that he was a conduit, is not a mere better. He's beyond what the mere better is. And there's also evidence in the record, besides his guilty plea, in which he made numerous concessions and admissions, that he participated in the operation of an illegal gambling operation. Besides that evidence, there's also the email in which he sent to a person by the name of initials DF, in which he made substantial claims of being involved in bookmaker.com. Now, defendant challenges the truthfulness of that email by saying, basically, he was lying to DF in order to try to get some loan deferral on loans that he owed to DF. Nevertheless, Your Honor, regardless of whether that's true or not, the fact that he made that statement to DF, knowing that it would be believable to DF, I think it's substantial evidence that he was, in fact, involved in illegal gambling. Secondly, there's this memorandum of an interview of the actual better involved in this case. And then in that particular interview, the better specifically stated that he used defendant to place bets on sporting events and that he, at that time, owed Silvera about $3 million. That doesn't sound like somebody, a better who has defendant as somehow his agent. That sounds like somebody who is betting with defendant. That's substantial evidence, Your Honor, that the better characterized it as owing money to Silvera. So the evidence here is very strong that defendant was involved in the illegal gambling operation. As far as defendant carrying his burden, his declarations, counsel right now made a number of statements, many of which are not in admissible evidence. The declarations submitted by defendant himself, they established very little and they failed to carry his burden. He essentially, at farthest, goes in, I believe it's the fourth declaration he submitted, Excerpt of Record 305. At most, he states that his emissions of guilt were based upon the advice that the money that he handled. Now, amazingly, I think enough, that itself doesn't establish anything because if defendant is what the evidence suggests, which is that he's a part of the gambling organization, that actually is correct advice, that the monies he handled were tainted. And so he's failed to establish that he has no involvement in the bookmaking operation, and based on that, he hasn't carried his burden of showing that he both received efficient performance and suffered prejudice. It does suggest that the money was already no good when he got it. I apologize, Your Honor. I couldn't hear, Your Honor. It does suggest that the money was already no good when he got it, i.e., and that part isn't true because of the better exception, right? So it was only – but on the other hand, once it came to him and then he started transferring the money around within his own accounts, I suppose, was the transfer within his own accounts otherwise money laundering? Yes, and those – I'm sorry, I cut Your Honor off. I'm sorry. Yes, the initial $2.75 million that came in constituted – that converted the money into proceeds the moment it hit his accounts, and then the three subsequent transfers, which are the charged counts, those constitute the money laundering of proceeds. But when you describe – I'm sorry. Go ahead. Go ahead. That would be true whether he was working for the sports betting organization or not. Yes, and I would point the court to the definition of proceeds, which obviously was amended after the Santos decision to include gross receipts. The definition of proceeds is very broad. The definition of proceeds includes monies that are retained or obtained either directly or indirectly as part of unlawful activity. I mean, just to explain my problem. It seems to me that even given the language that he admitted to, it isn't clear that he was working for the sports betting organization. So as I said earlier, it seems to me your easier hoe is that that doesn't matter as long as he was – even if he was an independent middle person, independent business, he still has the same problem. And I was trying to ask you whether if that were the case. You seem to shy away from that characterization. I don't understand why. But if it were the case, is it still true that while the minute he got the money, it may not have been proceeds? It became proceeds at least – when he got the money, it was proceeds because it was essentially for his business of being the middle person. And therefore, every time he transferred it around, it was still a violation. Is that an accurate read of the statute? Yes, Your Honor, that is an accurate. And that wasn't my intention to shy away from the – I keep articulating it the other way, and I don't know why. Well, the question I have is in the plea agreement, the factual basis for the plea describes the proceeds here and says the proceeds were generated by the illegal sports betting business in which the defendant participated in. Is that consistent with the characterization that you've now adopted relying on the 337A theory? I guess the argument, if I were to tease out the nuance, would be that the government believes that the defendant was at a minimum an agent of the gambling organization. But even if he were, as Judge Berzon put it, if he were some sort of independent broker in between, that would nevertheless still qualify for the statute. So I don't know if that answers the question. Well, that may be right. I mean, it may be that it's still covered by the statute, and so maybe there's no prejudice. But it's very hard reading this to think that anyone was thinking of 337A as the theory, and it's not mentioned, and then the facts, as described, don't seem consistent with it. I think the 337 argument, Your Honor, is just a kind of a, I guess a secondary argument as to even if he were this independent operation, nevertheless he would still be guilty of the statute. Well, if it wasn't 337A at the time the plea was entered, what was the predicate for the 1955 predicate to the 1956? That he was involved and operated an illegal gambling operation. Well, but it had to be proceeds that fit all the elements, and other than 337A, I'm not sure I see how this could have been put together. It's not clear to me, Your Honor, if the 337, if the 1955 must have a predicate of a state offense. That's not clear to me. And obviously counsel didn't, the defense didn't raise this issue, so I'm not fully prepared to respond on it. But it's not clear to me. There might have been a different predicate for it? The plea agreement mentions 1955. It doesn't mention what's been incorporated in 1955. Yeah, and I think what I'm uncertain about is whether 1955 must incorporate some sort of state statute. Because it seems like it also could stand on its own without incorporating a state statute. Well, no. Since whoever conducts finances, manages, supervises, et cetera, in a legal gambling business, and that's a state statute, it's used in this section. A legal gambling business means a gambling business which is in violation of a state law or political subdivision and involves more than five persons and has been or remains substantially continuous operation. So there's a definition, and it would have to be proven. It doesn't seem to have been mentioned. Of course, this is not at all what anybody has argued here. Anyway, you're way over your time. Is there anything you want to say in closing? Unless the court has any other questions, I will submit at this point. Thank you, Your Honor. Thank you very much. And we'll go back to Mr. Duff for one minute. Just for one minute, I agree with the court that 1955 does require a state violation and also... But your work is state violation. In fact, if you follow it through, it doesn't make any difference that it's not in the plea agreement. I didn't hear what you said there, Your Honor. I'm saying that there was a state violation, as we mentioned before, i.e. he received and held the money, whether it was independently a male person or whether he was working on behalf of a sports betting organization. So if there's a problem, that connection isn't made in the plea agreement. Does that matter? Well, I don't think that was the basis for... Well, it must have been because it says 1955, and 1955 says it has to be a violation of state law, and the state was California. So what else could it be? Well, Your Honor, they mentioned the state law violations in their opposition brief for the first time. They never mentioned it in the district court. 1955 requires that. Doesn't 1955 require that there be a violation? Yes, it does. So they did cite 1955. So they, therefore, necessarily allege that it was in violation of state law. Well, I disagree with the interpretation that by Silvera receiving the money from the gambler and holding that money, that that's a violation of state law, but just holding the money. Particularly the million dollars that he sent back to him. That would be a violation of state law? I doubt that. It says, however, for gain, harm, or reward, or gratuitously holds in any manner whatsoever any money to be wagered, which would be stake, pleasure, wager, et cetera. So it specifically says that. Yeah, and I think that's referring to people who work for gambling operations that are part of the bookmaking operation. Thank you very much. Thank you. Thank you both. And the case of the United States v. Silvera is the United States v. the Wallops.
judges: Baldock, Berzon, Collins